USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______________
DATE FILED: May 12, 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

UNITED STATES OF AMERICA

- v. -

MIGUEL DELACRUZ,

Defendant.

------------------------------------------------------------------X

14 Cr. 815 (KBF)

OPINION & ORDER

**KATHERINE B. FORREST**, United States District Judge:

On December 11, 2014, a three-count Indictment was returned against Miguel Delacruz and six other individuals. Delacruz, along with his co-defendants, is charged with participation in a conspiracy to interfere with commerce by threats or violence (Count One), participation in a conspiracy to distribute and possess with intent to distribute narcotics (Count Two), and possession of a firearm in furtherance of a crime of violence and a drug-trafficking offense (Count Three). (ECF No. 25.)

The Government alleges that during the summer and fall of 2014, defendant along with a number of co-conspirators planned to rob a drug supplier in New York City, with lethal force if necessary. The Government alleges that Delacruz stated that they were going to harm the main target drug supplier. The robbery—which was in fact a sting operation arranged by the Drug Enforcement Administration ("DEA") —was set to occur on November 13, 2014. On that day, defendant is alleged to have driven several of his co-conspirators from Philadelphia to New York

City to carry out the robbery. Defendant was allegedly driving a Buick in which the leader of the group was also riding. After various meetings and communications among the co-conspirators in Manhattan, the leader of the crew and others exited the Buick. Shortly thereafter, law enforcement stopped the Buick and arrested defendant; his co-defendants were also arrested at approximately the same time. At the time of his arrest, defendant was alone in the Buick.

Defendant and his co-defendants were arraigned before this Court on December 16, 2014. At that time the Court also set a schedule for the production of discovery and the filing of appropriate motions. (ECF No. 26.) Per that schedule, the Government was to complete its Rule 16 production, except for transcripts of audio recordings, by December 19, 2014. The instant motion, seeking discovery and disclosures of various sorts, was timely filed on April 1, 2015. (ECF No. 38.)

## I. APPLICABLE LEGAL STANDARDS

### A. Discovery Obligations in Criminal Cases

Rule 16 of the Federal Rules of Criminal Procedure governs pre-trial discovery in criminal cases. See In re Terrorist Bombings of U.S. Embassies in E. Africa, 552 F.3d 93, 124 (2d Cir. 2008) (citations omitted). The rule provides, in pertinent part, that a defendant is entitled to obtain from the Government documents and objects that are "within the government's possession, custody, or control" if they are "material to preparing the defense" or will be used by the Government in its case-in-chief at trial. Fed. R. Crim. P. 16(a)(1)(E).

Evidence that the Government does not intend to use in its case-in-chief at trial is material "if it could be used to counter the government's case or to bolster a defense; information not meeting either of those criteria is not to be deemed material within the meaning of the Rule." United States v. Stevens, 985 F.2d 1175, 1180 (2d Cir. 1993). Rule 16(a) is not—and never was— "intended to provide the defendant with access to the entirety of the government's case against him." United States v. Percevault, 490 F.2d 126, 130 (2d Cir. 1974) (citation omitted). "Discovery of evidence in criminal prosecutions is, inevitably, more restricted than discovery in civil cases." United States v. Tolliver, 569 F.2d 724, 728 (2d Cir. 1978). Rule 16 "does not entitle a criminal defendant to a 'broad and blind fishing expedition among [items] possessed by the Government on the chance that something impeaching might turn up.'" United States v. Larranga Lopez, No. 05 Cr. 655 (SLT), 2006 WL 1307963, at *8 (E.D.N.Y. May 11, 2006) (alteration in original) (citing Jencks v. United States, 353 U.S. 657, 667 (1957)).

B. 3500 Material

The Jencks Act provides that "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). The plain meaning of this provision does not require production of 3500 material before trial. In practice, however,

courts in this district require the Government to produce 3500 material at least the Friday prior to the commencement of trial and sometimes earlier.

The Jencks Act is intended to provide the defense with prior statements of government witnesses for purposes of impeachment. United States v. Carneglia, 403 F. App'x 581, 586 (2d Cir. 2010). The Jencks Act is not a general discovery device. See United States v. Exolon-Esk Co., No. 94-CR-17S, 1995 WL 46719, at *2 (W.D.N.Y. Jan. 19, 1995) (citing In re United States, 834 F.2d 283, 286 n.2 (2d Cir. 1987)); see also United States v. Jackson, 345 F.3d 59, 76 (2d Cir. 2003) (The Jencks Act "does not normally mandate disclosure of statements made by a person who does not testify." (citations omitted)).

C. Brady Obligations

"There is no general constitutional right to discovery in a criminal case, and Brady did not create one." Weatherford v. Bursey, 429 U.S. 545, 559 (1977); see also Pennsylvania v. Ritchie, 480 U.S. 39, 59 (1987) ("Defense counsel has no constitutional right to conduct his own search of the [Government's] files to argue relevance." (citation omitted)); United States v. Evanchik, 413 F.2d 950, 953 (2d Cir. 1969) ("Neither [Brady] nor any other case requires the government to afford a criminal defendant a general right of discovery."); United State v. Meregildo, 920 F. Supp. 2d 434, 440 (S.D.N.Y. 2013) ("Brady is not a rule of discovery—it is a remedial rule." (citing United States v. Coppa, 267 F.3d 132, 140 (2d Cir. 2001))).

Rather, Brady established that the Government has a constitutional obligation to disclose favorable and material information to the defendant. See Brady v. Maryland, 373 U.S. 83, 87 (1963).

"Brady material that is not 'disclosed in sufficient time to afford the defense an opportunity for use' may be deemed suppressed within the meaning of the Brady doctrine." United States v. Douglas, 525 F.3d 225, 245 (2d Cir. 2008) (alteration omitted) (quoting Leka v. Portuondo, 257 F.3d 89, 103 (2d Cir. 2001)); see also Coppa, 267 F.3d at 135 ("Brady material must be disclosed in time for its effective use at trial." (citation omitted)). Brady material buried within significant amounts of 3500 material and provided too close to trial to permit effective use may—under certain circumstances—also be deemed suppressed. See Douglas, 525 F.3d at 245; see also United States v. Rittweger, 524 F.3d 171, 181 n.4 (2d Cir. 2008) ("Complying with the Jencks Act . . . does not shield the government from its independent obligation to timely produce exculpatory material under Brady . . . .").

## II. DISCUSSION

Defendant's motion requests discovery of 19 broad categories of documents and information including generally: (1) evidence from the cell phones of Delacruz's co-defendants, (2) the Government's list of trial exhibits; (3) the identification of the Government's trial witnesses, confidential informants, and cooperating witnesses, together with their Giglio information; (4) statements made by any co-defendant or co-conspirator to law enforcement; and (5) general information and statistics as to the Government's use of sting operations, particularly relating to possible race-

based selective enforcement and prosecution. Defendant also moves for immediate production of Brady and Giglio material.

The 19 discovery requests cast a broad net. The net is broader than that which the rules allow without particular rationale. No such rationale has been provided. In light of the absence of rationale, the Court does not find it necessary to discuss the requests on an individual basis. Instead, it states certain propositions generally applicable to its determination.

First, the Government has Brady obligations with which it must comply. The Government has stated that it is aware of those obligations—and the Court finds no basis to believe that it has not met them or will not continue to meet them. As set forth in the discussion of the law, Brady is not a general discovery device and cannot justify the discovery sought herein.

Second, the Government also has Giglio and Jencks Act obligations. It is aware of those obligations, and the Court has no reason to doubt that it will comply with them at the appropriate time—sufficiently in advance of trial so as to give defense counsel adequate time to prepare for cross-examination of government witnesses. Defendant's demand that Giglio and 3500 material be provided at this pre-trial stage is premature. No particular rationale has been presented which would justify such an unusually early production.

Third, defendant is entitled to certain discovery pursuant to Rule 16. The Government has represented that it has complied with its Rule 16 obligations. In particular, the Government has represented that it has already complied with

defendant's Requests Nos. 4 and 5—which seek lists of "all property seized from defendant's person or control at the time of his arrest" and "all property seized from the vehicle which defendant is alleged to have been driving at the time of his arrest." As to cell phone evidence, the Government has represented that it has produced the cell phone that was seized from defendant at the time of his arrest, as well as search warrant affidavits listing the other cell phones that were seized and their respective owners.[1] Defendant has not presented any facts suggesting that the Government's representations are inaccurate.

Fourth, defendant's demands for immediate disclosure of the Government's exhibit and witness lists are premature. As to the exhibit list, there is no authority for the proposition that the Government must disclose its anticipated trial exhibits at such an early juncture. As to the witness list, it is well-settled that the Government is "under no obligation to give [a defendant] advance warning of the witnesses who would testify against him." United States v. Alessi, 638 F.2d 466, 481 (2d Cir. 1980) (citation omitted). The Court may compel pretrial disclosure of the identity of government witnesses on a "specific showing" that such disclosure is both material to the defense and reasonable in light of the circumstances of the case. United States v. Bejasa, 904 F.2d 137, 139-40 (2d Cir. 1990) (emphasis in original) (internal quotation mark omitted). Aside from defendant's general comments regarding sting operations, no such showing has been made here. The

[1] Defendant is not generally entitled to discovery into the content of his co-defendants' cell phones. He has not offered any explanation as to why such discovery is appropriate or necessary in this case.

Court has set a trial date and will set dates for disclosures of trial exhibits and witnesses at the appropriate time.

Fifth, defendant's demands for disclosure of the identities of the Government's confidential informants and cooperating witnesses are inappropriate. "The government generally enjoys a 'privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law.'" Jackson, 345 F.3d at 69 (quoting Roviaro v. United States, 353 U.S. 53, 59 (1957)); see also United States v. Fields, 113 F.3d 313, 324 (2d Cir. 1997) ("The government is not generally required to disclose the identity of confidential informants." (citation omitted)). "The defendant bears the burden of showing the need for disclosure of an informant's identity" and "must establish that, absent such disclosure, he will be deprived of his right to a fair trial." Fields, 113 F.3d at 324 (citations omitted). Defendant has not met this heavy burden here. Defendant's conclusory assertion that disclosure is "especially crucial in the instant case because of the nature of the phony stash house sting operation" is insufficient. See Fields, 113 F.3d at 324 ("Speculation that disclosure of the informant's identity will be of assistance is not sufficient to meet the defendant's burden . . . ."); United States v. Saa, 859 F.2d 1067, 1073 (2d Cir. 1988) ("[I]t is not sufficient to show that the informant was a participant in and witness to the crime charged.").

Sixth, defendant's demands for co-defendant and co-conspirator statements are similarly inappropriate. It has long been the law that such statements are not discoverable under Rule 16. See Percevault, 490 F.2d at 129 (Rule 16 "was intended

to permit the defendant liberal discovery only of his own statements in the government's possession." (emphasis added)); In re United States, 834 F.2d at 287 ("[W]e hold that, as to the district court's order for the production of statements of government witnesses, the Jencks Act controlled, and the district court had no inherent power to modify or amend the provisions of that Act." (citations omitted)); id. at 286 n.2 (subject to Brady, "if the Government d[oes] not intend to call anyone to testify concerning coconspirators' statements, they [are] not discoverable at all").

Finally, defendant's demands for general information and statistics relating to the Government's use of sting operations are unwarranted. Defendant has not set forth the legal basis for such demands. To the extent he relies on Rule 16, the law is clear that Rule 16 does not authorize defendants to examine the Government's files in order to pursue selective-prosecution claims.[2] See United States v. Armstrong, 517 U.S. 456, 463 (1996) (Rule 16 "authorizes defendants to examine Government documents material to the preparation of their defense against the Government's case in chief, but not to the preparation of selective-prosecution claims."). To the extent defendant relies on the Due Process Clause of the Fifth Amendment, he has not met the "rigorous standard" required to obtain discovery in support of a selective-prosecution claim. Armstrong, 517 U.S. at 468. To obtain such discovery, a defendant must produce some evidence tending to show that a federal prosecutorial policy (1) had a discriminatory effect and (2) was

[2] Defendant asserts that he is not pursuing a "selective prosecution and enforcement" claim, but rather alleges that minorities "are repeatedly targeted by law enforcement with respect to 'sting' operations and are thus naturally prosecuted." However, such claim is precisely one for selective enforcement.

motivated by a discriminatory purpose. See id. at 465, 468. As to the first element, the defendant must make "a credible showing of different treatment of similarly situated persons," id. at 470—that is, he must "produce some evidence that similarly situated defendants of other races could have been prosecuted, but were not," id. at 469. Here, defendant has produced no such evidence—statistical or otherwise. Nor has he produced any evidence that the Government was motivated by a discriminatory purpose. Generic references to "the growing opposition by Courts around the country to the government's practice of creating 'sting' operations" are plainly insufficient.[3]

## III. CONCLUSION

For the reasons set forth above, defendant's motion is DENIED. The Clerk of Court is directed to terminate the motion at ECF No. 38.

SO ORDERED:

Dated: New York, New York
May 12, 2015

K. B. Forrest

KATHERINE B. FORREST
United States District Judge

[3] Defendant asserts that he would use the information "in the assertion of a possible entrapment defense." It is not clear, however—and defendant does not explain—what bearing general information and statistics relating to sting operations has on an entrapment defense in this case.