**United States District Court**
**Southern District of New York**

**United States of America**

    - against -

                                                                **Ind. # 14  Cr. 815 (KBF)**

**Miguel Delacruz,**
            **Defendant**

                                **Sentencing Memorandum**

Louis R. Aidala
Attorney for Miguel Delacruz
546 Fifth Ave., 6th fl.
New York, NY 10036
212 750 9700
Lraidala@aol.com

# LOUIS R. AIDALA
**Attorney at Law**
**546 Fifth Avenue**
**6th Floor**
**New York, NY 10036**

Ph: (212) 750 9700                                                                 Fax:   (212) 750 8297

*Via ECF*

November 2, 2015

Hon. Katherine B. Forrest
United States District Judge
US Court House
500 Pearl St.
New York,  NY 10007

Re: US v. Miguel Delacruz
      Ind. # 14   Cr. 815  (KBF)

Dear Judge Forrest:

      This letter is written in anticipation of the sentencing of Miguel Delacruz, which is scheduled to take place before Your Honor on Friday, November 13, 2015.  This submission was due last Friday, October 30th, and I respectfully request that the Court accept it out of time as I was not in the office last week.

      For the reasons set forth in Section "C" below, it is respectfully requested that the Court impose a non-guidelines sentence of time served, or at most, one that is below the minimum of the advisory guidelines range of 46 - 57 months.

      A non-guideline sentence is permissible under the terms of the plea agreement between the parties, and it is submitted that a sentence of time served would be reasonable and sufficient, but not greater than necessary, to satisfy the sentencing goals of 18 U.S.C. 3553(a).

**A.  Facts**

      Mr. Delacruz was charged, along with six co-defendants, with Conspiracy to Commit Hobbs Act Robbery, Conspiracy to Distribute and Possess with Intent to Distribute Narcotics, and with use and possession of a firearm in relation to the two aforementioned offenses.

      The charges resulted from a Sting Operation which was orchestrated by the DEA and in which the lead defendant, Alex Velez, was approached by two government informants [a cooperating

witness (CW) and a paid informant (CI)] about engaging in narcotics transactions. No narcotics deal was ever finalized, however, a few months later the informants again contacted Velez, this time about robbing their purported drug supplier, whom they described as dangerous.

Velez agreed to supply four men to commit the robbery and one man as the driver. Delacruz was to be the driver/lookout. On the night of the planned "robbery", the defendants arrived in two vehicles, one of which was driven by Delacruz, with Velez as the sole passenger. They were arrested without incident as they approached the scene. No contraband was found in the rented vehicle driven by Delacruz, or on his person.

**B.   The Plea Agreement**

Mr. Delacruz pled guilty, pursuant to an agreement with the government, to Conspiracy to Commit Hobbs Act Robbery, under Count One of the Indictment. The terms of the agreement were as follows: The base offense level was 20, which was increased by 5 points because a firearm was possessed (by the co-defendants), and by 1 point because the taking of a controlled substance was the object of the offense, for a total of 26. With a 3-point adjustment for Acceptance of Responsibility , the final adjusted offense level was 23. With a Criminal History Category of I, the advisory guidelines range of imprisonment was 46 -57 months.[1]

The parties further agreed that either party may seek a sentence outside the Stipulated Guidelines Range.

**C.  The PSR**

Defendant has the following objections to the PSR.

1.   Pp. 6-7, ¶ 19.  Defendant objects to the statement, "...Velez knew that Delacruz was involved in selling narcotics," as innacurate. Mr. Delacruz asserts that there is no factual basis for such a statement by Velez.

2. Pp. 9-10, ¶ 30.   Defendant objects to the final sentence, "Delacruz stated that they were going to harm the main target drug supplier". It is noted that the transcripts of the meetings that were provided to defense counsel by the government contain no such statement by Mr. Delacruz.

3. Pp. 13- 14,  ¶ 64. On the top line on p. 14, the correct spelling of "Jamil" Delacruz, is "Jamel". The correct spelling of "Janel" Delacruz" is "Jandel".

**D.  Sentencing Law**

18 U.S.C.  3553(a) directs sentencing courts to impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth in paragraph (2) thereof, *i.e.,* (A)to reflect the

---

[1] The Probation Department recommended a sentence of 46 months, at the bottom of the advisory guidelines range, as set forth in the Pre-Sentence Report (PSR).

seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; ( C ) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant and the need to provide restitution to any victims of the offense. Since United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), of course, courts must consider all of these factors, along with the now-advisory sentencing guidelines, and there is no question that the Court is entitled, after all relevant considerations, to impose a *non-guidelines sentence*. United States v. Crosby, 397 F. 3d 103,111 (2d Cir. 2005). Thus, since Booker, the Court has the authority to impose a sentence below the advisory guideline range, and it must give equal consideration to factors other than the guidelines in imposing sentence.

Subsequent sentencing decisions by the Supreme Court have given district courts increasing discretion in imposing sentences outside the guidelines. The Court has underscored the merely advisory nature of the Sentencing Guidelines and has emphasized that any attempt to give special weight to the guidelines is contrary to its holding in Booker. Appellate review of sentencing decisions is limited to a determination of the reasonableness of the sentence. See, Gall v. United States, 552 U.S. 38 (2007); Kimbrough v. United States, 552 U.S. 85 (2007); Rita v. United States, 551 U.S. 338 (2007).

In reviewing the reasonableness of a non-guidelines sentence, the Court in Gall rejected an appellate rule that requires "extraordinary" circumstances to justify a sentence outside the Guidelines range, as well as proportionate justifications for departures, the latter being inconsistent with Booker. Gall, 552 U.S. at 41.

The Supreme Court further instructed that a district court should begin by correctly calculating the applicable guidelines range and should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. Gall, *id.,* citing US v. Rita. In so doing, the district judge may not presume that the guidelines range is reasonable. Gall, 552 US. at 41.

Clearly, as these Supreme Court decisions demonstrate, sentencing courts have much greater leeway than they had in the past - not only under the mandatory guidelines regime, but even since Booker eliminated the mandatory nature of the guidelines and made them merely advisory. The Court has now rejected both a "presumption of reasonableness" as to the guidelines range, and a requirement of "extraordinary circumstances" before a sentencing court may deviate from the guidelines. Therefore, an individualized assessment of the facts and the defendant is key to determining the appropriate sentence in a particular case.

Thus, applying relevant statutes and the dictates of the Supreme Court, a non-guidelines sentence in this case will satisfy the goals of sentencing and serve the interests of justice.

**E.  Considerations Under 18 U.S.C. § 3553 (a)**

As the Second Circuit noted in Crosby, without the mandatory duty to apply the Guidelines, consideration of the other section 3553(a) factors "acquires renewed significance". Crosby, 397 F. 3d at 111. Also, United States v. Lake,  419 F 3d 111, 114 (2d Cir 2005).  As noted, *supra*, the subsequent Supreme Court sentencing decisions underscore the renewed significance of the sentencing factors other than the advisory guidelines.

It is submitted that after consideration of the relevant factors as to Mr. Delacruz,  the Court should find that a sentence below the advisory guidelines range is sufficient to address all of the sentencing goals. Indeed, the Court should recognize the government's obvious evaluation of Mr. Delacruz's rather limited role in the offense by offering him a plea whereby the Court could reasonably sentence him to a below guidelines sentence, including time served.

1.  History and Characteristics of the Defendant

Mr. Delacruz  is 38 years of age and is a naturalized U.S. citizen, having emigrated from the Dominican Republic with his parents at the age of 12. Since arriving in this country he has lived a mainstream life, marrying and starting a family and maintaining steady employment. He has no history of substance abuse and has no prior arrests or convictions. The instant offense is his first encounter with the law.

Since 2004,  he has worked full time on weekends as a valet parking attendant at a company in Philadelphia, where he lives. Since 2007,  he has also operated a used clothing business with his wife. He earns a modest income from his two jobs. He has owned  the home in which he resides with his wife and three children, ages 12, 9  and 8, since approximately 2006. His house, valued at approximately $69,000, has a mortgage of approximately $47,000, and he has a loan with a balance of approximately $10,000 on the sole family vehicle, a 2011 Toyota.. It is noted that the PSR reports that his wife now works as a clothes washer and has been unable to financially manage the clothing business they previously operated.

Although Mr. Delacruz has a limited education, he has studied English and can speak English with proficiency.

2.  Nature and Circumstances of the Offense

As noted in Section "**A**", above, Mr. Delacruz was to be the driver/lookout in a planned "robbery" of a purported drug dealer in the Bronx. The offense resulted from a Sting operation orchestrated by the DEA and involving co-defendant Velez, whom Mr. Delacruz knew since childhood in the Dominican Republic.

While the PSR states that Velez claimed he involved Delacruz in the planned offense because, *inter alia*, he knew him to be a drug dealer, Mr. Delacruz denies this claim. It is noted that

Delacruz was to have received a fee for driving and being the lookout. He was not going to sell the purported narcotics or share in the profits, so the claim by Velez that he supposedly recruited Delacruz because he knew him to be engaged in selling narcotics is unconvincing.

It is further noted that the allegations in the Complaint regarding statements allegedly made by Delacruz at meetings with Velez and the informants prior to the date of the intended robbery were not borne out by the transcripts of said meetings that were provided to counsel by the government. In particular, Delacruz said nothing about their hurting the drug supplier who was the intended victim of the robbery.

No contraband was found in the rented vehicle driven by Delacruz and even the statements by Velez support the fact that he was merely the driver, and the co-defendants were to have committed the actual robbery.

Finally, it cannot be overlooked that this offense was the result of a Sting Operation in which the DEA and its informants - as is usually the case in Sting Operations - were able to manipulate the potential sentences of the defendants by specifying a large amount of narcotics and stating that their purported drug supplier, who was the intended victim of the robbery, was armed and volatile, thereby inducing the robbery crew to take a firearm with them. While Mr. Delacruz pleaded guilty to only the Hobbs Act Robbery Conspiracy and was not part of the actual robbery crew but was rather the driver/lookout, as a co-conspirator his guidelines were nevertheless increased by 5 points due to the possession of a gun by the co-defendants.

3.  Punishment, Deterrence, Protection of the Public and Rehabilitation

It is believed that a sentence of any additional incarceration would be punitive in nature and would not serve any of the other goals of sentencing. As noted above, Mr. Delacruz, at age 38, has been a productive member of society and has never been arrested before. He is a family man who works two jobs. He sincerely regrets his involvement in this offense and has expressed shame and remorse. His children are unaware of his present situation.

It is believed that he is highly unlikely to recidivate, as this one foray into criminal activity has taught him a bitter lesson. He has remained steadily employed throughout his adult life and has assumed the responsibilities of family and home ownership. His finances certainly do not bear any indication of lucrative criminal activity. He has a heavily mortgaged home and an outstanding loan on a five year old car and has worked two jobs for many years to provide for his family.

Mr. Delacruz has been completely candid with counsel since the outset of this case and has assumed responsibility for his actions. He is not a danger to society and does not need rehabilitation, and he has a job and a home that he can return to upon release.

**D.  Conclusion**

For all of the foregoing reasons, it is submitted that the sentence requested by defendant, *i.e.,* time served - or at most, a below guidelines sentence - taking into account all of the sentencing

factors set forth above, would be "sufficient, but not greater than necessary" to address the goals of sentencing. It is respectfully submitted that a term of additional imprisonment would be counter-productive in this instance.

      It is noted that the Probation Department has recommended a term of 46 months, which is at the minimum of the advisory range of 46-57 months.  Also,  the government's willingness to offer a plea agreement with a relatively low advisory range and the opportunity for defendant to request a non-guidelines sentence suggests that such a sentence would not be considered unreasonable.

      Wherefore, it is respectfully requested that the Court impose a sentence as requested herein.

      Respectfully,

      S/
      Louis R. Aidala
      Attorney for Miguel Delacruz

cc: Noah Solowiejczyk, AUSA
    Eun Young Choi, AUSA